Argued and submitted July 29, 1998; resubmitted En Banc February 3, reversed and remanded for new trial March 17, 1999

## STATE OF OREGON,
*Respondent,*

*v.*

## ROBERT MOORE, III,
*Appellant.*

### (9612-49561; CA A96947)

978 P2d 395

Robin A. Jones, Deputy Public Defender argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, Edmonds, De Muniz, Landau, Haselton, Armstrong, Wollheim and Brewer, Judges, and Warren, Senior Judge.

DE MUNIZ, J.

Warren, S. J., dissenting.

## DE MUNIZ, J.

Defendant appeals his convictions on one count of fourth-degree assault, ORS 163.160, and three counts of recklessly endangering another person. ORS 163.195. The issue on appeal is whether the testimony of a police officer and two other witnesses repeating the hearsay statements made by the victim declarant should have been admitted in evidence. We hold that the testimony should not have been admitted and reverse and remand for a new trial.

Defendant's convictions stem from an incident on Christmas Day 1996. Defendant was traveling from Tualatin to Gresham in a Ford Explorer to visit his ex-wife. His fiancee, Norine Olea, was driving. Defendant was in the back seat with their daughter and her half-sister. He was not driving because he had been drinking. He was arguing with Olea about his ex-wife. Defendant testified that Olea pulled into a 7-11 parking lot where defendant tried "to grab for the keys." When Olea tried to prevent him from getting the keys, defendant accidentally hit her in the face with his elbow. He testified that she then jumped out of the vehicle while it was still moving. Defendant then attempted to climb over the seats to stop the vehicle. The vehicle stopped in a landscaped island in or near the parking lot. After the vehicle came to rest, a man pulled defendant from the vehicle. Two men then held defendant on the ground until the police arrived.

According to a state's witness, Deborah Narro, Olea ran into the 7-11, "crying and shaking," and said, "He's taking my kids, and he's been drinking," and asked for help. Mr. Narro, who was also in the 7-11, ran out to the vehicle as defendant was getting out. Narro testified that defendant took a swing at him. When Officer Hucke of the Gresham Police Department arrived at the scene, he observed that Narro and another man had defendant pinned on the ground. Hucke believed defendant was intoxicated and placed him in the patrol car. Hucke then interviewed Olea in the store where he observed that she had a large red mark on the side of her eye and was "extremely distraught."

The rest of Hucke's testimony, all of it hearsay attributed to Olea, along with the Narros' hearsay evidence, is the

subject of this appeal. The court originally ruled *in limine* that all of Hucke's testimony was admissible within the excited utterances exception to the hearsay rule. OEC 803(2). However, at that time, it was apparently not made clear to the court that not all of the statements Hucke was attributing to Olea were made in the immediate aftermath of the incident. Hucke later testified that he had asked Olea only "basically just some preliminary questions" at the 7-11, and that then she asked to go to a private place to feed her baby. Hucke took Olea and the two children to defendant's ex-wife's residence where he took her statement. There "[s]he calmed down" and "related in more detail how she had been struck." At this point, defendant objected, based on the Oregon Evidence Code, and the court conducted a hearing outside the presence of the jury to try to determine what testimony related to statements made at the 7-11 and what testimony related to the subsequent interview. At the conclusion of the hearing, the court allowed Hucke to testify in front of the jury that Olea told him:

> "She was driving a car, when she was struck with a Christmas package. And throughout some period of time unknown to me, she was also punched."

Defendant argues that the trial court erred when it denied his motion *in limine* to exclude all hearsay statements by the three witnesses, because admission of the statements violated his right to confront witnesses against him, as guaranteed by Article I, section 11, of the Oregon Constitution. We review the issue as a matter of law. *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985).

Because we do not reach constitutional questions unless they are necessary to decide a case, ordinarily we consider questions under state statutes before reaching the state constitution. *State v. Jensen*, 313 Or 587, 592, 837 P2d 525 (1992). However, here, we must reach the constitutional issue to decide the admissibility of some of the challenged evidence,[1] and, because the constitutional issue is the same for

---

[1] Defendant concedes that Mrs. Narro's statement at trial that Olea said, "He's taking my kids, and he's been drinking," would be admissible under OEC 803(2) and that Mr. Narro's hearsay testimony merely repeats that of his wife, so it would be harmless. He also concedes that some of Hucke's hearsay testimony is probably admissible under the statute but argues that all of his testimony is inadmissible under the confrontation clause of the Oregon and federal constitutions.

all of the disputed hearsay statements, we begin with that issue.

Defendant first argues that, even if Olea's statements otherwise qualified as excited utterances, the admission of those statements without a showing of Olea's unavailability violated constitutional confrontation protection. That is, although the rule purports to allow the admission of such statements regardless of the declarant's availability, such admission runs afoul of Article I, section 11, of the Oregon Constitution:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor; provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing; provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise; provided further, that the existing laws and constitutional provisions relative to criminal prosecutions shall be continued and remain in effect as to all prosecutions for crimes committed before the taking effect of this amendment."

In *Campbell*, the Oregon Supreme Court considered whether the introduction of hearsay under OEC 803(18a) violated the defendant's right to confrontation under the Oregon and federal constitutions. In holding that the defendant's right to "meet the witnesses face to face" had been violated, the court stated that:

"[B]efore any out-of-court declaration of any available living witness may be offered against a defendant in a criminal trial, the witness must be produced and declared incompetent by the court to satisfy either Article I, section 11, of the Oregon Constitution, or the Sixth Amendment to the United States Constitution." 299 Or at 652 (footnote omitted).

■     More recently, in *State v. Kitzman,* 323 Or 589, 920 P2d 134 (1996), the Supreme Court, relying on its own reasoning in *Campbell,* held that, under OEC 803(18a)(b), hearsay statements cannot be admitted against a criminal defendant unless the declarant is found by the trial court to be unavailable:

> "In other words, in a criminal proceeding, if a living witness is *not* declared incompetent by a trial court, and that witness' hearsay statements are admitted at trial as evidence against the defendant, the defendant's rights under Article I, section 11, of the Oregon Constitution, are violated. It follows that, when the state sought to introduce such hearsay statements, the unavailability of the declarant first must be shown, in order to secure the defendant's rights under Article I, section 11." *Id.* at 605 (footnotes omitted).

■     Defendant points out that, in *State v. Jensen,* 107 Or App 35, 40, 810 P2d 865 (1991), *aff'd in part and rev'd in part* 313 Or 587, 837 P2d 525 (1992), we applied the *Campbell* logic to OEC 803(2) and concluded that, under Article I, section 11, of the Oregon Constitution, excited utterances could not be admitted against a criminal defendant unless the declarant is found to be unavailable by the court. That part of our holding was reversed by the Supreme Court on its determination that the defendant had not properly preserved the issue for appellate review. Here, however, the issue is properly preserved, and defendant argues that the same reasoning that we applied in *Jensen* applies equally here. We agree.

The state concedes that it did not establish or attempt to establish that Olea was unavailable. However, the state urges us not to extend the *Campbell* logic to OEC 803(2) on the ground that the language in *Campbell* closely follows that of a United States Supreme Court opinion, *Ohio v. Roberts,* 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), and that, since that time, the United States Supreme Court has considerably narrowed the scope of *Roberts* in cases such as *United States v. Inadi,* 475 US 387, 106 S Ct 1121, 89 L Ed 2d 390 (1986), and *White v. Illinois,* 502 US 346, 112 S Ct 736, 116 L Ed 2d 848 (1992). In *White,* the Court distinguished the hearsay statements at issue in *Roberts,* which involved a Confrontation Clause challenge to admission of a transcript

of testimony in a probable cause hearing from excited utterances and statements made for the purpose of medical diagnosis, and concluded that the latter's spontaneous nature and setting provided a substantial degree of reliability that "cannot be recaptured even by later in-court testimony." *White*, 502 US at 356. The Court concluded that there was not a sufficient threat of lost evidentiary value with excited utterances under the Confrontation Clause to require them to be buttressed or replaced by in-court testimony.[2]

From this, the state argues that it follows that we should narrow our interpretation of the Supreme Court's holding in *Campbell*. We reject the state's reasoning. The Supreme Court did not say in *Campbell* that, from that point on, Oregon law would mimic the ebb and flow of federal law decisions in the area of hearsay evidence. Rather, the court, in determining a matter of Oregon law, found *Roberts* to be cogent. Nothing in *Campbell* supports the extraordinary proposition that the Oregon Supreme Court delegated to the United States Supreme Court the competence to determine matters of Oregon constitutional law. It may be that, on review, the Oregon Supreme Court could find *White* to be persuasive and, consequently revise *Campbell* and *Kitzman*. But unless, or until, the court does so, *Campbell*, with its incorporation of *Roberts'* rationale, and *Kitzman*, reiterating that reasoning, remain the law of Oregon.

Here, the state made no showing that Olea was unavailable to testify. In *State v. Herrera,* 286 Or 349, 358, 594 P2d 823 (1979), the Supreme Court held that, if the state wishes to introduce evidence that denies a defendant his constitutional right to confront witnesses, then the state must justify its use. In other words, the burden is on the state here to show that the declarant was unavailable, which it concedes it did not do. The trial court erred in allowing all of

---

[2] The state also notes that, in *White*, 502 US at 353-54, the Court stated:

"In the course of rejecting the Confrontation Clause claim in [*Roberts*], we used language that might suggest that the Confrontation Clause generally requires that a declarant either be produced at trial or to be found unavailable before his out-of-court statement may be admitted into evidence. However, we think such an expansive reading of the Clause is negated by our subsequent decision in [*United States v. Inadi*, 475 US 387, 106 S Ct 1121, 89 L Ed 2d 390 (1986)]."

Olea's hearsay statements into evidence because admission of the statements violated defendant's right to confront witnesses against him, as guaranteed by Article I, section 11, of the Oregon Constitution.

Because defendant's first assignment of error is dispositive, we do not address his remaining ones.

Reversed and remanded for new trial.

**WARREN, S. J.,** dissenting.

The majority reaches its result by simply following in the footsteps of *State v. Campbell*, 299 Or 633, 705 P2d 694 (1985). I believe, however, that *Campbell* was decided under a mistaken reading of federal law. Although the Supreme Court has adopted that mistake as Oregon law, subsequent federal case law convinces me that we should not feel bound to follow it.

The court in *Campbell* considered whether the introduction of hearsay under OEC 803(18a)[1] violated the defendant's right to confrontation under both the Oregon and federal constitutions.[2] First analyzing the state constitutional challenge,[3] the court held that the defendant's right "to meet the witness face to face" had been violated. The court stated that it adopted

"the reasoning of the Supreme Court of the United States [in *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980)] in determining *what constitutes unavailability* of a hearsay declarant and *what constitutes adequate indicia of reliability* of hearsay declarations to satisfy our state

---

[1] OEC 803 provides, in part:

"The following [is] not excluded by [OEC 802], even though the declarant is available as a witness:

"* * * * *

"(18a) Complaint of sexual misconduct. A complaint of sexual misconduct made by the prosecuting witness after the commission of the alleged offense. Such evidence must be confined to the fact that the complaint was made."

[2] The Sixth Amendment to the United States Constitution provides that, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

[3] It should be noted that the two confrontation clauses are different, but no court has ever shown that they have a different effect. In *Campbell*, the court did not address the federal constitutional challenge.

constitutional confrontation clause." *Id.* at 648 (emphasis added).

The court cited *Roberts* and understood it to establish "a two-part test for determining whether admission of out-of-court statements of a witness who does not testify at trial satisfies the defendant's right to confrontation." *Campbell,* 299 Or at 648. Without any analysis or reasoning, the court simply applied the *Roberts* two-part test as Oregon law.[4]

The issue in *Roberts* was whether the introduction at trial of an unavailable witness's preliminary hearing testimony violated the federal confrontation clause. In Justice Blackmun's majority opinion, the Court acknowledged that the federal confrontation clause reflects a preference for face-to-face confrontation at trial and that one of its primary interests is the right of cross-examination. In reaching its decision, the Court did not attempt "to map out a theory of the Confrontation Clause that would determine the validity of all * * * hearsay exceptions." *Id.* at 64-65 (quoting *California v. Green,* 399 US 149, 162, 90 S Ct 1930, 26 L Ed 2d 489 (1970)) (internal quotation marks omitted). The Court created a two-step approach, stating, "In the usual case * * * the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Roberts,* 448 US at 65. Once a witness is shown to be unavailable, the Court then requires adequate "indicia of reliability," only admitting hearsay that falls within a firmly rooted hearsay exception or that has particularized guarantees of trustworthiness. The Court noted, however, that a demonstration of unavailability is not *always* required. *Id.* n 7 (citing *Dutton v. Evans,* 400 US 74, 91 S Ct 210, 27 L Ed 2d 213 (1970)).

In 1986, after the Oregon Supreme Court had decided *Campbell,* the United States Supreme Court once again reviewed a federal confrontation clause challenge to hearsay testimony. *United States v. Inadi,* 475 US 387, 106 S Ct 1121, 89 L Ed 2d 390 (1986). The statements at issue in *Inadi* were those of a coconspirator who did not testify. The

---

[4] I assume that the court intended to adopt the *Roberts* two-part test as Oregon law, although it never expressly did so.

Court reversed the decision of the Court of Appeals for the Third Circuit that had based its decision on its understanding that *Roberts* required unavailability to be shown as a condition to the admission of all hearsay. The Court of Appeals viewed the requirement of unavailability set forth in *Roberts* as setting forth a "clear constitutional rule." *Inadi,* 748 F2d 812, 818 (3rd Cir 1984). The Supreme Court, however, disagreed with that interpretation of *Roberts*, stating:

> "Roberts should not be read as an abstract answer to questions not presented in that case, but rather as a resolution of the issue the Court said it was examining: 'the constitutional propriety of the introduction in evidence of the preliminary hearing testimony of a witness not produced at the defendant's subsequent state criminal trial.' " *Inadi,* 475 US at 392-93 (quoting *Roberts*, 448 US at 58).

Having clarified the scope of *Roberts*,[5] the Court then looked at the question before it: whether the federal confrontation clause requires the proponent to show that a non-testifying coconspirator is unavailable to testify, as a condition for admission of that coconspirator's out-of-court statements. In its analysis, the Court differentiated both coconspirators' statements and unspecified exceptions to the hearsay rule from situations where former testimony is only a weaker substitute for live testimony. According to the Court, coconspirator statements are distinguishable from the prior testimony statements in *Roberts* (and all of the cases cited in *Roberts)* for the following reasons: they provide evidence that cannot be replicated with in-court testimony; they derive their significance from the circumstances in which they were made; the co-conspirators were likely to speak differently when talking to each other about their illegal goals; and the relative positions of the parties will have changed since the time the statements were made. "[C]o-conspirator statements derive much of their value from the fact that they are made in a context very different from trial, and therefore are usually irreplaceable as substantive evidence." *Inadi*, 475 US at 395-96. These are all points that may also be made about excited utterances.

---

[5] Interestingly, Justice Blackmun, who wrote the majority opinion in *Roberts*, joined in the *Inadi* majority, which clearly limited the application of *Roberts*.

In 1992, the United States Supreme Court reviewed the issue again, but this time the statements were admitted under the excited utterance and medical diagnosis exceptions to the hearsay rule. *White v. Illinois*, 502 US 346, 112 S Ct 736, 116 L Ed 2d 848 (1992). The Court began with a discussion of *Roberts* and then repeated the analysis it set forth in *Inadi*, applying its observations of the coconspirator statements to the excited utterance and medical diagnosis statements. The Court first noted that the rationale for permitting these two types of hearsay testimony is that they are both made in contexts that provide substantial guarantees of their trustworthiness. Additionally, the factors that make these statements so reliable, "cannot be recaptured even by later in-court testimony." *Id.* at 356. The Court then stated:

> "A statement that has been offered in a moment of excitement—without the opportunity to reflect on the consequences of one's exclamation—may justifiably carry more weight with a trier of fact than a similar statement offered in the relative calm of the courtroom." *Id.*

Distinguishing the statements at issue in *Roberts* from excited utterances and statements for medical diagnosis, the Court noted that they were materially different in that there was no threat of lost evidentiary value if the pretrial hearing statements were replaced with live testimony. As shown above, this is not the case with excited utterances. According to the Court:

> "To exclude such probative statements under the strictures of the Confrontation Clause would be the height of wrongheadedness, given that the Confrontation Clause has as a basic purpose the promotion of the 'integrity of the fact-finding process.'" *Id.* at 356-57 (quoting *Kentucky v. Stincer*, 482 US 730, 736, 107 S Ct 2658, 96 L Ed 2d 631 (1987)).

In Oregon, since *Campbell*, the courts have uniformly applied the two-part *Roberts* test to every type of hearsay exception they have reviewed. No Oregon court has ever sought to explain why this test should be applied to *any* type of hearsay admitted over a confrontation clause challenge.

Oregon courts have had the opportunity to address this issue with respect to excited utterances twice since *Campbell* was decided. First in 1990, in *State v. Moen*, 309 Or

45, 786 P2d 111 (1990), the Oregon Supreme Court determined that out-of-court statements were admissible under both the excited utterance and statement for purposes of medical diagnosis exceptions to the hearsay rule. The court applied the *Roberts* test to both federal and state confrontation clause challenges to the admission of the statements. In *Moen*, there was no question about the unavailability of the declarant as she was one of the murder victims that the defendant was convicted of killing.

The following year, in *State v. Jensen*, 107 Or App 35, 810 P2d 865 (1991), we concluded that the victim's statements were admissible as excited utterances. After reaching that conclusion, we then went on to apply the *Roberts* test to both state and federal confrontation clause challenges and found that the declarant was not shown to be unavailable. On review by the Oregon Supreme Court, after finding that the trial court did not err in holding that the statements were admissible under the medical diagnosis exception,[6] the court concluded that it should not even reach the confrontation argument, as the defendant made no state or federal confrontation objections at either of his trials, and it vacated that portion of our opinion. *State v. Jensen*, 313 Or 587, 837 P2d 525 (1992). The Supreme Court further noted:

> "[I]n *White v. Illinois* * * * the Supreme Court of the United States held that the Confrontation Clause of the Sixth Amendment does not require that the prosecution must either produce the declarant at trial or the trial court must find that the declarant is unavailable before a trial court admits testimony under the 'spontaneous declaration' and 'medical examination' exceptions to the hearsay rule." *Id.* at 598 n 8.

What is most interesting about this footnote is what the court did not say. The court did not mention that the courts in Oregon have required a finding of unavailability in every case that has reviewed a state confrontational clause challenge since *Campbell* was decided in 1985. The court did not mention that unavailability was required in *Moen*, when both state and federal confrontation clause challenges were

---

[6] The court did not disturb the finding of the Court of Appeals that the same statements were admissible under the excited utterance exception.

brought against the same two exceptions to the hearsay rule. Perhaps the court did not do so because it recognized that requiring unavailability for these hearsay exceptions should not be continued under the Oregon confrontation clause either.

The theoretical basis for the "excited utterance" exception to the hearsay rule is that there was a condition of excitement that temporarily stilled the capacity for reflection and produced an utterance free of conscious fabrication. Wigmore, 6 *Evidence* § 1747, 135 (3d ed 1940). According to the United States Supreme Court, "such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and the cross-examination would be superfluous." *Idaho v. Wright*, 497 US 805, 820, 110 S Ct 3139, 111 L Ed 2d 638 (1990). The rationale underlying the excited utterance exception is that

> "[t]he utterance is really an effusion. Being spontaneous in nature, the declaration is free from the elements of design, contrivance and self-service which at times color testimony given from the witness stand. The crediblity of a declaration of that kind is not dependent solely upon the veracity of the declarant. The pain, excitement or horror of the event had stilled the powers of reflection and had enabled the event itself to speak through the tongue of the declarant. It is the startling event rather than the will of the declarant that propelled his tongue. If one who sought the truth were required to make a choice between the spontaneous declaration and the testimony under oath of the declarant he possibly would choose the former. The circumstances under which the spontaneous declaration was made commend it as a reliable index to the truth." *State v. Hutchison*, 222 Or 533, 537, 353 P2d 1047 (1960).

The United States Supreme Court in *White* has made it clear that *Campbell* was decided under a mistaken interpretation of *Ohio v. Roberts*. *White* clarified that the admission of hearsay evidence was not always dependent on unavailability. Specifically it held that that precondition did not apply to excited utterances. I do not, therefore, feel that

we should be bound to follow the pronouncements of *Campbell* or its progeny. I believe that the requirements of both the state and federal confrontation clauses are the same, therefore, following the reasoning in *White*, unavailability is not required to meet the terms of the Oregon confrontation clause. The statement in this case should not be subject to exclusion based on the argument made by defendant.

I dissent.

Edmonds, J., joins in this dissent.